# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 2 3 2007

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

FOREST FISHER,  )
    Plaintiff,  )
  )
v.  )    Civil Action No. 7:06cv00529
  )
VIRGINIA DEPARTMENT OF  )
CORRECTIONS, et al.,  )
    Defendants.  ) By:   Hon. Michael F. Urbanski
  )      United States Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Forest Fisher ("Fisher"), an inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq. Fisher alleges that while incarcerated at the Red Onion State Prison ("ROSP") defendants violated his constitutional and statutory rights by placing him in segregation and refusing to allow him to have a religious medallion. Fisher seeks preliminary and permanent injunctions ordering the Virginia Department of Corrections ("VDOC") and other defendants to allow him to possess a "Thor's Hammer" religious pendant, ordering the VDOC to recognize Asatru as a bona fide religion,[1] ordering his release from segregation, returning him to the institutional security classification he had prior to his placement in segregation, initiating his transfer to a Level 5 institution, discontinuing the allegation that he was involved in an escape attempt, and expunging from his institutional record any reference to his involvement in an escape attempt. Fisher also seeks a declaratory judgment stating that Asatru is a bona fide religion and is entitled to equal protection under the

_____

[1] Asatru is a religious movement whose focus is in reviving the Norse beliefs of the Viking Age as described in the Eddas, a compilation of 13th century Norse poems.
http://en.wikipedia.org/wiki/Asatru; http://en.wikipedia.org/wiki/Edda

Constitution and that the VDOC policy banning the "Thor's Hammer" pendant is unconstitutional and violates RLUIPA, as well as unspecified monetary damages. By Order entered January 24, 2007, all dispositive matters in this action were referred to the undersigned to submit proposed findings of fact and a recommended disposition.

This matter is before the court on defendants' motion for summary judgment. The court notified Fisher of defendants' motion as required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), and advised him that his failure to reply to defendants' motion may result in dismissal and/or summary judgment being granted for defendants. As Fisher has filed a response to defendants' motion and the time allotted for any further response has expired, this matter is ripe for disposition.

Upon review of the record, the undersigned finds that Fisher has not presented any issue of material fact and that defendants are entitled to judgment as a matter of law as to Fisher's claims regarding his placement and confinement in segregation at ROSP. However, the undersigned finds that there is a material dispute of fact as to Fisher's claims that defendants violated his constitutional and statutory rights by enacting and enforcing an allegedly religiously discriminatory policy. Defendants base their motion as to Fisher's religious claims on one narrow ground - that Fisher did not file a request to have the "Thor's Hammer" pendant approved by the VDOC's Faith Review Committee. As there is a material question of fact as to this issue and because this is the only basis for the defendants' motion for summary judgment on Fisher's religious claims, the undersigned recommends that defendants' motion for summary judgment on these claims be denied. For the same reason, the undersigned cannot find that at

this stage that defendants are entitled to qualified immunity on the religious claims.[2] Nonetheless, the undersigned finds that several of Fisher's requests for relief are moot and/or not available means for relief. Therefore, the undersigned recommends that defendants' motion for summary judgment be granted in part and denied in part and defendants be directed to file a supplemental motion for summary judgment on the merits of Fisher's remaining religious claims.

## I.    Claims

Fisher alleges two distinct sets of facts giving rise to the instant claims. First, he claims that his due process rights were violated when he was wrongfully placed and incarcerated in the segregation unit at ROSP. Second, he alleges that defendants violated his constitutional and statutory rights in enacting and enforcing an allegedly discriminatory policy prohibiting inmates from possessing a "Thor's Hammer" pendant.

### A.

Fisher asserts that on or about December 17, 2002, he was wrongfully moved from the progressive housing unit at ROSP to the segregation unit, after another inmate attempted to escape. Fisher claims that as he was returning from recreation at ROSP on December 17, 2002, he witnessed another inmate attempting to escape by climbing an interior fence. Guards noticed the escaping inmate, who was very near Fisher, and in their attempts to secure the situation, Fisher was tackled, handcuffed, and taken to a holding cell for questioning. After questioning, Fisher was placed in an isolation cell. On December 18 or 19, 2002, Fisher spoke to an

---

[2]Because there are a number of legal issues which the defendants have not addressed, the undersigned recommends that the defendants be directed to file a supplemental motion for summary judgment completely addressing Fisher's religious claims.

3

investigator regarding the attempted escape, during which time he informed the investigator that he had planned the escape and no correctional officers were involved in the attempted escape. On December 24, 2002, Fisher was advised he was being placed into segregation pending further investigation of his involvement in the attempted escape.

Fisher remained in segregation at ROSP for nearly four years, until October 17, 2006. Fisher concedes that during the time he spent in segregation he received regular Institutional Classification Authority ("ICA") hearings regarding his continued confinement in segregation. However, he contends that he was not provided sufficient opportunity to argue to the ICA panel that he should be released from segregation and that he was not provided with the reasoning behind the ICA panel's decision to continue to hold him in segregation.

Fisher states that on December 24, 2002 he was given a Detention Authorization Form and an Institutional Classification Committee Report Form, both of which stated that he was being placed under investigation by Investigator Yates following a conversation with an unnamed institutional investigator. (Compl. ¶¶ 48-53.) Although Fisher now contests the veracity of his statements to the investigator, Fisher admits that during this conversation he informed the investigator that "he had planned the escape attempt and no correctional officers had assisted in any way." (Id. ¶¶ 48-49.) Despite Fisher's contentions to the contrary, Fisher's complaint concedes that he was given 24 hour advance notice of all ICA hearings and that he made an oral statement to the ICA panel, the counselor recorded his statement on the ICA form, and the ICA panel then stated "its recommendation and the rationale for" the decision. (Compl. ¶ 56.) The counselor also recorded the rationale and final recommendation on the ICA form, and after Fisher signed the form, the hearing was concluded. (Id.) Further, Fisher's exhibits

4

establish that the ICA panel reviewed his continued detention in segregation approximately every ninety days and that they recommended that he continue to be confined in segregation because either the attempted escape was still under investigation, criminal charges stemming from the attempted escape were expected and eventually pending, and/or that a longer period of adjustment was necessary before he could be released from segregation. (Compl. Ex. M-V, BB-CC, GG-HH, JJ-KK.)

Although Fisher claims he did not learn of any state charges related to the December 17, 2002 escape attempt until August 8, 2005, he was charged in a two count indictment for attempted escape and conspiracy to escape on March 7, 2003. (Compl. Ex. FF.) Those charges were nolle prosequi on February 24, 2006. (Compl. Ex. II.) On March 2, 2006, the ICA conducted another review of his continued placement in segregation, and at that time the ICA recommended that Fisher be released from segregation because he had remained charge free for almost three years. (Compl. Ex. JJ.) However, on April 6, 2006, Assistant Warden Armentrout disapproved the recommendation, stating that on December 17, 2002, Fisher attempted to escape from a Level 6 institution. (Id.) Fisher filed a grievance related to Armentrout's decision, but it was denied at the initial and appellate levels of grievance review. On May 11, 2006, the ICA found that based on his previous escape attempt Fisher should remain in segregation for a longer adjustment period, and he remained in segregation until October 17, 2006. (Compl. Ex. KK, LL.)

Fisher complains that only a month before the December 2002 incident, the ICA panel recommended that he be transferred from ROSP, a Level 6 "Supermax" facility, to a Level 5 facility. However, this recommendation was disapproved when he was subsequently placed in

5

segregation.  Fisher now asserts that his initial and continued placement in segregation was unconstitutional because he did not have an opportunity to argue to the ICA panel that he should have been released from segregation, the state escape charges were eventually nolle prosequi, and that following the nolle prosequi of the state charges there was no longer any basis for his continued confinement in segregation.

**B.**

Fisher alleges that in January 2005 he submitted a Personal Property Request form petitioning to order and possess a "Thor's Hammer" pendant.  Fisher asserts that as an Asatruan, this pendant is a necessary part of his religious exercise because it is a "powerful talisman" which protects him from negative forces, makes the area surrounding him "welcoming to the gods," and allows him to "communicate with the gods."  (Compl. ¶ 19.)  His request was returned unanswered with a memo listing the available religious medallions in the institutional commissary.  He filed a second Personal Property Request form on February 10, 2005, and this request was returned with a memo attached advising him to forward his request to Treatment Program Supervisor Taylor.  Fisher filed his request with Taylor on February 13, 2005, and Taylor advised him to complete a Request for Approval of Faith Item Form.  Fisher alleges he did so, and on May 18, 2005, Taylor advised him that the VDOC does not allow inmates to possess "Thor's Hammer" pendants.  (Compl. Ex. F.)  Fisher then filed a grievance asking for an exception to order and possess a "Thor's Hammer" pendant.  (Compl. Ex. A.)  His grievance was denied at both the initial and appellate levels of review, stating that the VDOC did not permit inmates to have a "Thor's Hammer" medallion.  (Id.)

6

Fisher has not provided any response from the Faith Review Committee nor a copy of his original request to the Faith Review Committee related to the "Thor's Hammer" pendant. At the same time, Fisher has provided over forty other exhibits supporting his claims, including letters he sent to various VDOC employees inquiring as to whether Asatru is a recognized religion and why Asatru medallions are not permitted in VDOC institutions; all his grievances, appeals, and appellate responses related to his religious claims and segregation claims; catalog price lists for "Thor's Hammer" pendants and religious books; and several printouts of institutional policies.

The evidence suggesting Fisher sought leave through the Faith Review Committee to have the "Thor's Hammer" pendant is three fold. First, following Fisher's February 13, 2005 request for the "Thor's Hammer" pendant, Taylor replied on February 16, 2005, advising Fisher to complete the attached form and return it to her. (Pl.'s Decl. in Opp'n Def.'s M. Summ. J. Ex. OO.) Second, in an Inmate Request for Information, dated April 25, 2005 and addressed to Taylor, Fisher informs Taylor he submitted his request to the Faith Review Committee, but has not yet received a response. (Pl.'s Decl. in Opp'n Def.'s M. Summ. J. Ex. PP.) In response, on May 11, 2005, Taylor advised him that she contacted "Richmond" and was informed a "decision will be forthcoming on [the] ordering of medallions." (Id.) Third, in Fisher's grievance related to the VDOC policy, Fisher states that with his second Personal Property Request he completed a "Religious Review Committee Request," but that the only reply was Taylor's May 18, 2005 response. (Compl. Ex. A.)

## II.    Defendants' Motion for Summary Judgement

In support of defendants' motion for summary judgment, defendants attached affidavits from Lewis Cei, Special Programs Manager for the VDOC, Tracy Ray, Warden at ROSP, J.W.

7

Armentrout, Assistant Warden at ROSP, and Yvonne Taylor, Treatment Program Supervisor at ROSP. Additionally, defendants attached copies of some of Fisher's grievances, the ICA hearing procedural requirements, and some of the ICA decision forms.

Defendants argue that to the extent that defendants are named in their official capacities for any alleged constitutional violations, they must be dismissed. Also, as the VDOC is not a person subject to suit under § 1983, defendants assert that it too must be dismissed. Defendants next argue that Fisher's requests for injunctive relief concerning his release from segregation and permission to possess the "Thor's Hammer" pendant are moot because Fisher was released from segregation on October 17, 2006 and the VDOC now allows inmates to possess the "Thor's Hammer" pendant.

As to Fisher's remaining claims for relief, defendants argue that Fisher is not entitled to relief as a matter of law. Defendants contend that Fisher's placement and prolonged confinement in the segregation unit at ROSP did not violate his constitutional rights because an inmate does not have the right not to be housed in a segregation unit.

As to his religious claims, defendants argue that they did not burden Fisher's rights to free exercise because Fisher failed to follow the proper procedural steps to have the faith item he desired approved by the Faith Review Committee. Defendants concede that when Fisher requested permission to order the "Thor's Hammer" pendant, that religious medallion was not on the list of pre-approved religious items. (Def.'s Mem. in Supp. M. Summ. J., Cei Aff. ¶ 6.) As such, in order to be allowed to order and possess the "Thor's Hammer" pendant, Fisher needed to submit his request to the Warden, who would then forward the request to the Faith Review Committee. (Id. at ¶ 5.) The Faith Review Committee would then make a final decision as to

8

whether the request for the non-approved religious item should be granted under these specific circumstances. (Id.) Although defendants acknowledge that Fisher submitted a written Personal Property Request to Taylor, defendants contend Taylor advised Fisher that this item was not on the list of approved religious items, and he was instructed to submit a Request for Religious Item to the Faith Review Committee. (Id. at ¶ 6-7.) However, rather than do this, Fisher filed an institutional grievance regarding the same. (Id.)

Finally, defendants argue that should the court determine they violated Fisher's constitutional or statutory rights, they are entitled to qualified immunity.

## III.    Analysis

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts in the light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). However, the court need not treat the complaint's legal conclusions as true. See, e.g., Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted); Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

9

## A. § 1983 Claims

Fisher alleges defendants violated his constitutional rights in placing him in segregation and in refusing to allow him to order and wear a "Thor's Hammer" pendant. As a threshold matter, the VDOC and defendants acting in their official capacities are not "persons" and, therefore, are not proper defendants in a §1983 action. See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Accordingly, the undersigned recommends all claims for relief for alleged constitutional violations committed by the same, be dismissed.

### 1. Segregation

Fisher alleges that his initial placement in segregation in December 2002 and his continued confinement in segregation until October 2006 violated the due process rights afforded under the Fourteenth Amendment.[3]

An inmate does not have a liberty interest in being housed at a particular institution or in avoiding isolation or separation from the general prison population unless the proposed transfer will subject the inmate to exceptionally more onerous living conditions, such as those experienced by inmates at a "Supermax" facility. Wilkinson v. Austin, 545 U.S. 209, 223 (2005) (holding that, despite the general rule that an interprison transfer does not implicate the Due

---

[3]The undersigned notes that although the defendants failed to make a statute of limitations argument, it appears that all claims arising before August 17, 2004 are time barred. Fisher signed his complaint on August 17, 2006; accordingly, all claims arising more than two years earlier are barred by the relevant statute of limitations. See Lewis v. Richmond City Police Depot, 947 F.2d 733 (4th Cir. 1991) (finding that as there is no statute of limitations for § 1983 violations, the state limitations period governing personal injury actions should be applied); Va. Code Ann. § 8.01-243(a) (establishing a two year statute of limitations for personal injury actions). Thus, claims regarding Fisher's placement into segregation at ROSP on or about December 22, 2002, and his continuing confinement through August 17, 2004, are time barred. As such, his claim must be amended to allege only that his due process rights were violated as to his continued confinement in segregation from August 17, 2004 through October 2006.

10

Process Clause, a transfer to a so-called "Supermax" facility at which a prisoner would experience exceptionally more onerous conditions may implicate the Due Process Clause); Sandin v. Conner, 515 U.S. 472, 484 (1995) (finding that protected liberty interests are generally limited to freedom from restraints which impose atypical and significant hardships on inmate in relation to ordinary incidents of prison life); Meachum v. Fano, 427 U.S. 215, 224 (1976) (stating that a valid conviction "empower[s] the State to confine [an inmate] in *any* of its prisons"); Montayne v. Haymes, 427 U.S. 236, 242 (1976) (holding that a mere transfer from one facility to another does not implicate the Due Process Clause, regardless of whether the transfer is the result of the inmate's misbehavior or is punitive in nature); Kennedy v. Blankenship, 100 F.3d 640, 642-43 n. 2 (8th Cir. 1996) (holding that placement in punitive isolation was not atypical and significant deprivation even though prisoner faced restrictions in mail, telephone, visitation, commissary, and personal-possession privileges).

In Wilkinson, although the Supreme Court found a prisoner's transfer to a "Supermax" facility entitled him to some due process, the Court noted that the conditions at the "Supermax" prison, i.e., 24 hour lock down, constant cell lighting, recreation limited to one hour once a day in a small room, and the prohibition of conversation between inmates, were not alone atypical, as such conditions would likely apply to most solitary confinement facilities, and alone were not sufficient to entitle an inmate to due process. Id. The Court stressed that in this instance these inmates were entitled to due process before such a transfer because "[u]nlike the 30-day placement [in segregation] in Sandin, placement at [the "Supermax" prison] is indefinite . . . is reviewed just annually . . . [and] placement disqualifies an otherwise eligible inmate for parole consideration." Id. Further, stating "while any of these conditions standing alone may not be

11

sufficient to create a liberty interest, taken together they impose an atypical and significant hardship" creating a liberty interest in avoiding placement in a "Supermax" institution. Id.

The facts of this case vary greatly from those in Wilkinson. First, Fisher was not transferred to a "Supermax" facility, but instead was merely transferred from one housing assignment in a "Supermax" facility to another.[4] Second, Fisher was afforded ICA hearings and review of those decisions by the Warden and/or Assistant Warden at ROSP regarding his continued placement in the segregation unit at ROSP approximately every ninety days.[5] Third, Fisher has not presented any evidence which suggests his parole eligibility is any way related to his placement in segregation at ROSP.[6]

Regardless, it is clear that Fisher was provided adequate due process. The requirements imposed by the Due Process Clause are flexible and variable dependent upon the particular

---

[4]Fisher concedes that immediately prior to his placement in the segregation unit, he was already incarcerated at ROSP, a Level 6, "Supermax" facility. Accordingly, unlike the inmates in Wilkinson, Fisher was not being transferred to a "Supermax" facility, but instead was merely transferred into the segregation unit from the progressive housing unit at ROSP. While Fisher alleges that a recommendation for an institutional transfer to a Level 5 prison had been made, the transfer had not been implemented. Therefore, the transfer at issue amounts to nothing more than a typical intrafacility transfer from the general population unit into a segregation unit.

[5]Despite Fisher's allegations that there was no reasonable basis for his placement in segregation at ROSP and the ICA hearings were a farce, it is clear from the record that at one point Fisher admitted his involvement in an attempted escape on December 17, 2002, that Fisher was charged in a two count indictment for his involvement in the escape in March 2003, and that those charges remained pending until the end of February 2006. (Compl. Ex. FF, II.) Accordingly, the court finds there was more than sufficient evidence to support the ICA panel's decision to hold Fisher in segregation. See Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985) (stating that the minimum requirements of procedural due process require prison review board's decisions to be supported by "some" evidence in the record).

[6]Fisher concedes that he is serving a life sentence, and his pleadings suggest that he does not expect to be eligible for parole. (Compl. ¶ 108.)

12

situation being examined.  <u>Wilkinson</u>, 545 U.S. at 224.  In light of the inherent security risks involved in prison management, an inmate is provided with sufficient due process prior to an institutional transfer resulting in exceptionally more onerous conditions for an indefinite period of time if the inmate is provided with notice of the factual basis for the placement and fair opportunity for rebuttal.  <u>Id.</u> at 226; <u>see also</u> <u>Wolff v.  McDonnell</u>, 418 U.S. 539, 556 (1974) (stating that an inmate's due process rights are necessarily limited by institutional needs and objectives).  Fisher concedes that prior to his placement in the segregation unit and during subsequent hearings regarding his continuing confinement in segregation, he was advised he was being placed into segregation pending investigation of the attempted escape charges, he was afforded an opportunity to participate in the ICA hearing by making a statement to the ICA panel, and following the ICA hearing, he was provided with a short written statement of the rationale for the ICA's decision.  Additionally, the ICA recommendation was reviewed by the Warden, providing another level of review.  Accordingly, the undersigned recommends that the court find that Fisher was provided with sufficient due process as to his original and continued placement in segregation and, thus, that defendants are entitled to judgment as a matter of law on this claim.[7]

## 2.    Religious Claims

Fisher alleges that defendants violated his First Amendment right to free exercise and his Fourteenth Amendment right to equal protection in disapproving his request to order and possess

---

[7]As Fisher concedes he was afforded the opportunity to argue his position to the ICA panel before they rendered a decision, the undersigned finds unavailing Fisher's assertion he should have been provided another opportunity to do so after a decision was made.

a "Thor's Hammer" pendant and in instituting a general policy prohibiting inmates from
possessing a "Thor's Hammer" pendant.

### a. Free Exercise

It is well established that a prisoner retains his federal constitutional right to freedom of
religion, and prisoners must be afforded "reasonable" opportunity to practice their religion. Cruz
v. Beto, 405 U.S. 319, 322 (1972). However, even when religious freedoms are at issue, prison
administrators must be afforded "latitude in the administration of prison affairs." Id. In
evaluating a constitutional challenge to prison regulations, the court must consider the following
factors: (1) whether there is a logical connection between the regulation and a legitimate
governmental interest; (2) if the inmate has an alternate means of exercising his religious right;
and (3) if accommodating the inmate's right would severely impact other inmates, prison
officials, and the allocation of prison resources. O'Lone v. Estate of Shabazz, 482 U.S. 342,
350-52 (1987).

Fisher alleges that wearing the "Thor's Hammer" pendant is a central tenet to his
religion, and, thus, the defendants substantially burdened his ability to practice his religion by
refusing to allow him to order and wear the pendant. He further alleges that this decision was
arbitrary and capricious because inmates of other religious denominations were allowed to wear
various religious medallions. Defendants do not question the sincerity of Fisher's religious
beliefs. Instead, they argue only that they did not burden Fisher's right to free exercise because
Fisher did not follow the VDOC procedure for obtaining permission to wear a religious
medallion which was not already on the list of pre-approved religious items. Accordingly, for
purposes of this litigation at its current stage, the undersigned will assume that Fisher is a

14

member of a bona fide religion and that he is sincere in his beliefs. See Cutter v. Wilkinson, 544 U.S. 709, 722 n. 13 (2005).

Fisher asserts that he followed the proper procedure for obtaining permission to obtain a "Thor's Hammer" pendant, a religious medallion admittedly not included on the pre-approved list of allowed religious items and requiring an exception from the Faith Review Committee, but was informed that a VDOC policy prohibited inmates from possessing the same. To demonstrate he did so, Fisher points to the following: (1) a Personal Property Request for the "Thor's Hammer" pendant, sent to Taylor on February 13, 2005, and her February 16, 2005 response, advising him to complete the attached form and return it to her, (Pl.'s Decl. in Opp'n Def.'s M. Summ. J. Ex. OO); (2) an Inmate Request for Information, dated April 25, 2005, addressed to Taylor, advising her that he submitted his request to the Faith Review Committee, yet has not received a response, and her May 11, 2005, answer advising him that she contacted "Richmond" and was informed a "decision will be forthcoming on [the] ordering of medallions," (Pl.'s Decl. in Opp'n Def.'s M. Summ. J. Ex. PP); and (3) a June 1, 2005 grievance related to the VDOC policy, stating that with his second Personal Property Request he completed a "Religious Review Committee Request," but the only response was Taylor's May 18, 2005 reply, (Compl. Ex. A.).

In their response, defendants only addressed Fisher's June 1, 2005 grievance in which Fisher stated that he should not be required to submit a religious property form request to the Warden and the Faith Review Committee because other religious medallions were purchased and possessed without such filings. Defendants contend that this grievance constitutes a concession that Fisher failed to comply with VDOC procedure. However, defendants overstate the

15

significance of the June 1, 2005 grievance. Indeed, Fisher noted that he was advised he needed to submit a Faith Review Committee request form and that he "complied with those instructions and waited patiently for a response." (Compl. Ex. A; Def.'s Mem. in Supp. M. Summ. J. Ex. I, Encl. A.) In short, this grievance does not indicate that Fisher refused to comply with the VDOC procedure for seeking leave to possess a religious item which had not been pre-approved, but rather suggests that Fisher attempted to comply.

Although defendants Cei and Ray assert that Fisher did not file the appropriate paperwork with the Faith Review Committee, neither they nor Taylor address Fisher's other documents. Nor does Taylor assert that Fisher failed to return the appropriate forms or paperwork to her as directed. Accordingly, the undersigned finds there is a genuine issue of material fact as to whether Fisher filed the appropriate requests with the Faith Review Committee. As the defendants argue only that they did not substantially burden Fisher's rights because he failed to pursue the appropriate institutional channels for approval of his religious item, this factual dispute precludes summary judgment on this claim.[8]

### b.    Equal Protection

Fisher also alleges that the policy prohibiting possession of the "Thor's Hammer" religious pendant and the defendants' refusal to grant him an exception to the policy violated his equal protection rights because inmate followers of various other religions were permitted to have religious medallions. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated

---

[8]In so finding, the undersigned does not otherwise address the merits of Fisher's First Amendment claims as defendants have not raised any other arguments. See Lovelace v. Lee, 472 F.3d 174, 190-93 (4th Cir. 2006) .

and that the unequal treatment was the result of intentional or purposeful discrimination."

Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). After such a demonstration, the court

then determines whether such a disparity in treatment can be justified under the requisite level of

scrutiny. See, e.g., City of Cleburne, 473 U.S. 432, 439-40 (1985); In re Long Term Admin.

Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471 (4th Cir.), cert. denied,

538 U.S. 874 (1999). After such a threshold showing is made, the court must determine if the

disparity in treatment is reasonable in light of the special security and management concerns in

the prison system. See Morrison, 239 F.3d at 655 (citing Jones v. North Carolina Prisoners'

Labor Union, Inc., 433 U.S. 119, 136 (1977)).

Fisher alleges he has been treated differently than similarly situated inmates of different

faiths merely because he practices an unconventional religion. Specifically, he claims that

defendants developed and enforced a discriminatory policy prohibiting inmates from possessing

the "Thor's Hammer" pendant, central to the practice of Asatru, yet allowed various Christian,

Jewish, Islamic, Hindi, and Indian religious medallions. Accordingly, the undersigned finds that

Fisher has made a threshold showing of an equal protection violation. See Native American

Council of Tribes v. Solem, 691 F.2d 382, 384 (8th Cir. 1982) (finding that denial of a privilege

to adherents of one religion while granting it to others is on its face discrimination on the basis

of religion in violation of the equal protection clause of the Constitution). As defendants have

not provided any foundation for their decision to disallow the "Thor's Hammer" pendant, and

they concede that in November 2005, the "Thor's Hammer" pendant was approved systemwide

17

for inmate possession, the court is precluded from entering summary judgment on this issue at this time.[9]

### B.    RLUIPA Claim

Fisher alleges that defendants substantially burdened his ability to practice his religion in implementing and enforcing a policy which prohibited an inmate from possessing a "Thor's Hammer" pendant which is central to his practice of Asatru and is necessary for him to effectively communicate with the "gods." Thus, he asserts the policy and defendants' actions violated the rights afforded under RLUIPA, and he now seeks declaratory, injunctive, and compensatory relief.

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a). Although the plaintiff bears the initial burden of establishing that the government's actions substantially burdened his exercise of religion, once such a showing is made, the government bears the burden of persuasion that its practice is in furtherance of a compelling government interest and is the least restrictive means of furthering that interest. Adkins v. Kaspar, 393 F.3d 559, 567 n. 32 (5th Cir. 2004), cert. denied, 545 U.S. 1104 (2005); Civil Liberties for Urban Believers v. Chicago, 342 F.3d 752, 760 (7th Cir. 2003), cert. denied, 541 U.S. 1096 (2004).

Defendants do not challenge the sincerity of Fisher's beliefs nor do they assert that the

---

[9]Again, there may be other grounds for dismissal of Fisher's equal protection claim, but defendants have not raised such arguments.

18

wearing of the "Thor's Hammer" pendant is not central to Fisher's religious exercise. Defendants also do not address Fisher's claim that in early 2005 there was a VDOC policy specifically prohibiting inmates from possessing the "Thor's Hammer" pendant. Instead, they argue only that they have not substantially burdened Fisher's religious exercise because Fisher failed to follow the VDOC procedure for obtaining permission to have a "Thor's Hammer" pendant. As noted above, the undersigned finds that there is a genuine issue of material fact as to whether Fisher followed the VDOC procedure for obtaining approval for possession of the "Thor's Hammer" pendant.

As the court must in a motion for summary judgment construe any factual dispute in the non-movant's favor, here, the undersigned is required to assume that Fisher is sincere in his religious beliefs and followed the appropriate procedure in requesting permission to wear a "Thor's Hammer" pendant, but his request was eventually denied. As such, defendants' failure to make any argument suggesting a VDOC policy prohibiting the possession of the "Thor's Hammer" pendant and/or that the VDOC procedure for gaining approval to have an exception made to the list of approved religious items is the least restrictive means of furthering any governmental interest precludes summary judgment on this claim. See Lovelace v. Lee, 472 F.3d 174, 190-93 (4th Cir. 2006) (finding that once an inmate has established an institutional policy substantially burdens his constitutional and statutory rights, the defendants must make a detailed argument establishing that the action at issue is the least restrictive means of meeting institutional needs such as security, order, discipline, and/or to control costs).

Nevertheless, insofar as Fisher seeks to sue Huffman, Ray, and Armentrout for RLUIPA violations, the undersigned finds that these claims must fail. Fisher concedes that the policy

19

regarding the prohibition of the "Thor's Hammer" pendant was not initiated at the institutional or regional level, but rather was issued by high level VDOC officials. Additionally, Fisher concedes that Huffman, Ray, and Armentrout merely enforced an official VDOC policy, whether that policy related to possession of the "Thor's Hammer" pendant or to the proper procedure for obtaining an exception to obtaining the "Thor's Hammer" pendant. Accordingly, the undersigned finds that because these defendants did not issue the policies in question, they are not liable in their official capacities. Nor, in merely following the dictates of that policy, did they develop the requisite intent for individual liability. Lovelace, 472 F.3d at 194-96 (finding that to be individually liable under RLUIPA a defendant must have acted with more than just negligence in burdening an inmate's right to free exercise) Likewise, as Fisher alleges only that Jabe reviewed institutional grievances, but was not responsible for enacting or enforcing the procedure utilized by inmates to petition the VDOC to make an exception to the pre-approved religious item list and/or the policy prohibiting inmates from possessing a "Thor's Hammer" pendant, the undersigned finds he cannot be liable in his official or individual capacity for any alleged RLUIPA violation. Accordingly, the undersigned recommends that all RLUIPA claims raised against these defendants be dismissed.

Fisher alleges that Cei was responsible for ensuring that the burdens placed on an inmate's free exercise, including specific policies prohibiting various religious items and/or the procedures for obtaining permission to obtain a religious item, complied with RLUIPA. Thus, in enacting a procedure for obtaining a religious item which placed a substantial burden on Fisher's ability to practice his religion, by failing to ensure that the Faith Review Committee's decision did not place a substantial burden on Fisher's free exercise, and/or in refusing to grant Fisher an

20

exception thereby placing a substantial burden on Fisher's free exercise, Cei may have violated

the terms of RLUIPA and be subject to both official and individual liability. Accordingly, the

undersigned finds that these claims must go forward at this time.[10]

Nonetheless, although the VDOC and Cei in his official capacity may be liable for

RLUIPA violations associated with the alleged policy prohibiting an inmate from possessing a

"Thor's Hammer" pendant, Fisher is not entitled to damages for these violations. Madison v.

Commonwealth of Virginia, __ F.3d __, 2006 WL 3823181, at *9-10 (4th Cir. Dec. 29, 2006)

(stating that the state's Eleventh Amendment immunity from suit for damages is not waived by

RLUIPA). However, as Fisher also seeks declaratory and injunctive relief for these alleged

violations against the VDOC and Cei, in his official capacity, these claims cannot be dismissed

at this juncture.

### IV.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity as to all of Fisher's claims

for damages regarding the denial of his request to possess and wear a "Thor's Hammer" pendant.

State officials are entitled to qualified immunity against suits for damages if a reasonable officer

facing the same situation would not have known that his actions violated plaintiff's clearly

established constitutional right. Anderson v. Creighton, 483 U.S. 635, 640 (1987). The court

"must inquire whether the established contours of the [right] were sufficiently clear at the time of

the [alleged violation] to make it plain to reasonable officers that their actions under these

particular circumstances violated" plaintiff's constitutional right. Winfield v. Bass, 106 F.3d

___

[10]Again it is recommended that defendants address the merits of Fisher's RLUIPA claims by
means of a supplemental motion for summary judgment..

21

525, 531 (4th Cir. 1997) (en banc).  See also Vathekan v. Prince George's County, 154 F.3d 173 (4th Cir. 1998).  The exact conduct at issue need not have been held to be unlawful so long as the unlawfulness of the conduct is manifest under existing authority.  Wilson v. Layne, 526 U.S. 603, 614-15 (1999).  When a legal question has "been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state," it is clearly established for purposes of qualified immunity.  Wallace v. King, 626 F.2d 1157, 1161 (4th Cir. 1980)

Defendants argue only that they are entitled to qualified immunity because a reasonable official would not have concluded that requiring an inmate to follow a written institutional request procedure before allowing that inmate to possess an unconventional religious item placed a substantial burden on an inmate's right to practice his religion.  Defendants do not address Fisher's claims that despite the procedure for obtaining an exception, in practice all inmates were prohibited from possessing the "Thor's Hammer" pendant, yet inmates were permitted certain other religious medallions.  Nor do they address evidence suggesting Fisher followed the appropriate procedure but his request was either ignored, lost, and/or ultimately denied.

There is a genuine issue of material fact as to whether Fisher followed the appropriate institutional procedure in attempting to gain permission to wear the "Thor's Hammer" pendant and/or as to whether defendants ultimately relied on this procedure in deciding to prohibit him from wearing the "Thor's Hammer" pendant.  When the parties' versions of the underlying events giving rise to the claim are in direct contradiction, resolution of the qualified immunity issue is inappropriate at the summary judgment stage.  See, e.g., Rainey v. Conerly, 937 F.2d

22

321, 324 (4th Cir. 1992) (finding that the district court properly denied defendant's immunity based summary judgment motion because "a determination of what actually happened is absolutely necessary to decide whether [defendant] could reasonably have believed that his actions were unlawful"); Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991) (holding that summary judgment was precluded where resolution of a claims depends on a determination of credibility as to the underlying events)

Further, assuming that Fisher followed the appropriate policy and his request was eventually denied, the real issue is whether it would have been clear to a reasonable prison official that denying an inmate a pendant central to the practice of his religion, while allowing inmates of various other religious denominations to have religious pendants, would have violated his constitutional and statutory rights. Defendants provided no basis for their decision to deny Fisher's request to possess a "Thor's Hammer" pendant, but allow certain other religious pendants. Nor have they addressed the allegation that before November 2005 there was a VDOC policy which specifically prohibited an inmate from possessing the same. Because defendants have not addressed these issues, there is no basis upon which to find qualified immunity. Accordingly, the undersigned recommends that qualified immunity be denied at this time.

## V.  Requests for Injunctive & Declaratory Relief

As relief for the alleged constitutional and statutory violations, Fishers seeks preliminary and permanent injunctions ordering the VDOC and other defendants to allow him to possess a "Thor's Hammer" religious pendant, ordering his release from segregation, returning him to the institutional security classification he had prior to his placement in segregation, initiating his transfer to a Level 5 institution, discontinuing the allegation that he was involved in an escape

23

attempt, and expunging from his institutional record any reference to his involvement in an escape attempt. Additionally, Fisher asks the court to order the VDOC to recognize Asatru as a bona fide religion and for a declaratory judgment stating that the VDOC policy banning possession of the "Thor's Hammer" pendant is unlawful under the Constitution and RLUIPA.

## A.

Fisher concedes that he was released from the segregation unit on or about October 17, 2006 and that inmates are now permitted to possess the "Thor's Hammer" pendant and, thus, that his request for injunctive relief on these issues are moot. Accordingly, the undersigned recommends that these claims for relief be denied. See Powell v. McCormack, 395 U.S. 486, 496-97 (1969) (finding that a claim for relief is moot when the relief sought has been achieved).

## B.

Fisher also asks the court to order prison officials to effectively expunge any reference to the attempted escape charge stemming from the December 17, 2002 incident, return him to the same institutional security classification he had prior to that incident, and initiate his transfer to a lower security institution because he claims there was no basis for these charge, as evinced by the fact that the state charges stemming from this incident were nolle prosequi. While "in certain limited circumstances" an inmate may have a right "to have prejudicial erroneous information expunged from [his] prison files," before such a claim will be heard in a federal court the inmate must demonstrate that he has requested relief from the relevant authority and that relief has been denied. Paine v. Baker, 595 F.2d 197, 202 (4th Cir. 1979). Fisher has not alleged any facts which suggest that he has properly presented his claims to the appropriate institutional

24

authorities and, thus, given them the opportunity to expunge the allegedly false material from his prison files.

Moreover, Fisher has not established that any information contained in his files is false. He concedes that during his first meeting with the institutional investigator he told the investigator that he planned the escape. (Compl. ¶¶ 48-49.) Thus, there is clearly some basis for a reference to the escape in his institutional file. Merely because the state declined to prosecute a criminal charge is not evidence that the charge is false or that the circumstances leading to the charge did not occur. See Washington v. Summerville, 127 F.3d 552, 557 (7th Cir. 1997), cert. denied, 523 U.S. 1073 (1998) (stating that a prosecution can be nolle prosequi for numerous reasons and is not necessarily indicative of defendant's innocence). Therefore, the undersigned finds no basis to order the VDOC to remove the reference to the escape charge from Fisher's institutional record, to assign him a lower security classification, nor to order his transfer to a lower security institution and, thus, recommends that these claims for injunctive relief be denied.[11]

## C.

Fisher also asks the court to order the VDOC to recognize Asatru as a bona fide religion

---

[11]Additionally, to have erroneous information removed from his record Fisher must establish that the information somehow impacted a protected liberty interest and, thus, violated the Due Process Clause. Paine v. Baker, 595 F.2d 197, 202 (4th Cir. 1979), see also Franklin v. Shields, 569 F.2d 784, 790 (4th Cir. 1977). However, as the decision to transfer prisoners to a segregation unit or to reclassify prisoners alone does not implicate the Due Process Clause, even if the information is erroneous and improperly considered as part of Fisher's institutional record, he would not have the right to have this information expunged from his record. See Meachum v. Fano, 427 U.S. 215, 224 (1976); see also Williams v. Stacy, 468 F.Supp. 1206, 1210 (E.D. Va. 1979).

25

and to recognize that a policy prohibiting inmates from possessing a "Thor's Hammer" pendant is a violation of the Constitution and the rights afforded under RLUIPA. However, these are prison management issues over which the court declines to exert control. Turner v. Safley, 482 U.S. 78, 84-86 (1987) (stating that the courts should defer to the expertise of prison officials in matters of prison administration). Fisher does not allege any facts which suggest that the VDOC's alleged failure to officially recognize Asatru as a religion has impeded his ability to practice his religious beliefs, other than his allegation that this alleged failure was the basis for denying his request for a "Thor's Hammer" pendant. However, as he concedes that the VDOC now allows inmates to possess the "Thor's Hammer" pendant, the undersigned can find no reason to order the VDOC to recognize this religion. Similarly, because the policy relating to the "Thor's Hammer" pendant has been eliminated, the undersigned finds no reason to issue declaratory or injunctive relief related to the future implementation of such a policy. However, Fisher's prayer for a declaratory judgment that the past implementation of the policy violated his Constitutional and statutory rights remains viable.

## VI.    Conclusion

For the reasons stated above, the undersigned recommends that defendants' motion for summary judgment be granted in part and denied in part. Specifically, the undersigned recommends the following: (1) defendants' motion for summary judgment on plaintiff's due process claims under the Fourteenth Amendment related to his placement and confinement in segregation be granted; (2) plaintiff's claims related to his confinement in segregation at ROSP be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); (3) defendants' motion for summary judgment as to plaintiff's free exercise and equal protection claims under the First and

26

Fourteenth Amendment be denied; (4) plaintiff's claims for alleged violations of his First and Fourteenth Amendment rights by defendants in their official capacities and the VDOC be dismissed; (5) plaintiff's claims for alleged RLUIPA violations by defendants Huffman, Ray, Armentrout, and Jabe, in their official and individual capacities, be dismissed; (6) plaintiff's request for monetary damages against the VDOC and Cei, in his official capacity, for alleged RLUIPA violations be denied; (7) plaintiff's request for monetary damages related to alleged RLUIPA violations against Cei in his individual capacity be allowed to proceed; (8) defendants' motion for summary judgment on the basis of qualified immunity be denied; (9) plaintiff's request for preliminary and permanent injunctive relief related to possession of the "Thor's Hammer" pendant and his release from segregation be denied as moot; (10) plaintiff's request for preliminary and permanent injunctive relief related to any reference in his institutional record to the attempted escape on December 17, 2002 and/or changes in his institutional security classification and housing assignment be denied; and (11) plaintiff's request for declaratory and injunctive relief ordering the VDOC to recognize Asatru as a bona fide religion and to recognize that a policy prohibiting inmates from possessing a "Thor's Hammer" pendant is a violation of the Constitution and the rights afforded under RLUIPA be denied.

Should this Report and Recommendation be adopted in full the following claims would remain: (1) Fisher's First and Fourteenth Amendment claims against defendants Jabe, Cei, Huffman, Ray, and Armentrout, in their individual capacities, asserting that defendants would not allow him to possess a "Thor's Hammer" pendant, central to his practice of Asatru, but allowed inmate followers of other religions to possess a variety of other religious medallions; and (2) Fisher's statutory claims under RLUIPA against the VDOC and Cei regarding the

27

implementation and enforcement of the VDOC policy relating to the "Thor's Hammer" pendant and the procedure for an inmate to obtain an exception to have a religious item not on the pre-approved religious item list. Additionally, as to Fisher's prayer for non-monetary relief, only his claim for a declaratory judgment that the past implementation of a blanket policy banning inmate possession of a "Thor's Hammer" pendant remains.

Further, the undersigned recommends that defendants be directed to file a supplemental motion for summary judgment on the merits of plaintiff's remaining claims. This motion and memorandum in support thereof should, at a minimum, address the following: (1) the rationale for prohibiting inmates from possessing the "Thor's Hammer" pendant; (2) the basis for allowing some religious medallions and disallowing other religious medallions; and (3) whether the VDOC policy prohibiting possession of the "Thor's Hammer" pendant and the procedure for obtaining an exception are the least restrictive means of meeting institutional needs.

The clerk is directed to immediately transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if they have any, to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusions of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C § 636(b)(1) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by the reviewing court as a waiver of such objection.

Further, the Clerk is directed to send a certified copy of this Report and Recommendation to Plaintiff and all counsel of record.

28

Entered this 23rd day of February, 2007.

Michael F. Urbanski
United States Magistrate Judge

29